REINHARDT, Circuit Judge,
concurring in part and dissenting in part.
I join Judge Kozinski’s opinion for the court, except for its holding that the Communications Decency Act (the “Act”), 47 U.S.C. § 230(c), immunizes Roommate from liability with respect to the statements contained in the “Additional Comments” section of users’ profiles, some of which expressly state the preferences of landlords for tenants based on race,[1] religion,[2] gender,[3] sexual orientation,[4] and national origin.[5] I would hold instead that none of the information that the Fair Housing Councils of San Fernando Valley and San Diego (“Councils”) challenge satisfies the test for § 230(c) immunity.
Roommate cannot receive § 230(c) immunity for publishing information in the “Additional Comments,” if it is “responsible ... in part, for the ... creation or development of information.” § 230(c), (f)(3); see also Batzel v. Smith, 333 F.3d 1018, 1031 (9th Cir.2003). The court’s opinion here sets forth two independent tests to determine whether Roommate, an interactive computer service, is responsible in part for creating or developing information under § 230(c): first, whether Roommate categorizes, channels and limits the distribution of information, thereby creating another layer of information, Op. at 928-29, 929; and second, whether Roommate actively prompts, encourages, or solicits the unlawful information. Id. at 928, 929. Meeting either test results in a computer service’s inability to obtain § 230(c) immunity. Unlike Judge Kozinski, I would hold that Roommate’s conduct with respect to statements in the “Additional Comments” satisfies both tests, and, thus, that Roommate is not immune for publishing that information.
I. Because Roommate Categorizes, Channels, and Limits Complete User Profiles, Which Include the Statements in the “Additional Comments,” Roommate is Responsible for Creating or Developing the Information
The court’s opinion draws a distinction between (1) the statements in the “House *931 hold” and “Preferences” portions of users’ profiles, which consist of users’ responses to specific questions about their identities and preferences for tenants on the basis of gender, familial status, and sexual orientation, and (2) the statements in the “Additional Comments” portion of the profiles, which consist of users’ free-form responses, and which in many instances contain preferences based on race, religion, and national origin, and in others expand upon the answers with respect to the preferences listed in the preceding portion of the profiles. It holds that Roommate is not immune for statements in the earlier portions but it is for statements in the “Additional Comments” portion. Op. at 929-30.
While I agree with Judge Kozinski’s reasons for rejecting immunity for statements in the “Household” and “Preferences” portions — that “[b]y categorizing, channeling and limiting the distribution of users’ profiles, Roommate provides an additional layer of information that it is ‘responsible’ at least ‘in part’ for creating or developing,” Op. at 929 (citations omitted), — I would hold that this principle applies to statements in the “Additional Comments” portion as well. I would do so because the “Additional Comments” portion is an integral part of the entire “users’ profiles,” which Roommate “categoriz[es], channels] and limit[s] [in] distribution.” Id.
Roommate does not display the different portions of a user’s profile in distinct emails or web pages, but instead aggregates an entire profile and presents it as a whole. Thus, when Roommate “provides an additional layer of information” by channeling the completed “user profiles,” id., that additional layer of information includes the “Additional Comments” section with the various responses. Aecord-ingly, Roommate should not be afforded immunity for any of the statements contained in the profile. In other words, the information that we should examine for the purpose of § 230(c) immunity should be the entire profile presented in the single email or web page, including all of the statements therein. There is no justification for slicing and dicing into separate parts the material that Roommate elicits and then channels as an integral part of one package of information to the particular customers to whom it selectively distributes that package.
This view is supported by Batzel, in which we stated that to “meet[ ] the definition of ‘information content provider’ [in § 230(f)(3) ] with respect to the information in question,” the “pertinent question” is whether the interactive computer service “can also be considered to have *creat[ed]’ or ‘developed]’ [the] e-mail message forwarded to the listserv,” 333 F.3d at 1031 (emphasis added). Critically, we considered the “information in question” to be the entire- “e-mail message,” and not merely selected sentences in the email which the plaintiff had identified as defamatory. Similarly, here, the “information in question” is the entire e-mail or web page, i:e., the complete profile. By channeling, categorizing and limiting distribution of the complete profile to the particular members who qualify to receive it, Roommate is responsible -in part for creating and developing the entire profile.
Because I conclude that the first test for determining whether Roommate is responsible in part for creating or developing the information is satisfied with respect to the entire user profile, including the statements in the “Additional Comments,” I would hold that Roommate cannot receive § 230(c) immunity for those statements.[6]
*932 II. Because Roommate Encourages, Solicits and Prompts its Users to Make Discriminatory Statements in the “Additional Comments” it is Responsible for Creating or Developing Those Statements
I would also hold that under the court’s second test Roommate similarly lacks § 230(c) immunity for the statements contained in the “Additional Comments.” Contrary to the conclusion in Judge Kozin-ski’s opinion that Roommate “does not prompt, encourage or solicit any of the inflammatory information provided by some of its members” in the “Additional Comments” portion of their profiles, the record amply demonstrates that it does. Op. at 929.
On the final page of the sign-up process in which prospective users create their profiles, Roommate’s site states, “We strongly recommend taking a moment to personalize your profile by writing a paragraph or two describing yourself and what you are looking for in a roommate” directly above a blank box. This page immediately follows the “My Roommate Preferences” form, which explicitly asks members to provide their preferences based on gender, sexual orientation and familial status. Judge Kozinski concludes that the “open-ended” recommendation on the “Additional Comments” page “suggests no particular information that is to be provided by members.” Op. at 929. However, when viewed in the context of the entire sign-up process that conveys the message to prospective users that they should express their preferences for tenants based on race, gender, sexual orientation, national origin and religion, ordinary users would understand the recommendation to constitute a suggestion to expand upon the discriminatory preferences that they have already listed and to list their additional discriminatory preferences in that portion of the profile.
This conclusion finds both subjective and objective support in the record. From a subjective perspective, Roommate’s site is designed so that users will express illicit preferences in their “Additional Comments.” The executive who created the site acknowledges that he intended that users would express preferences in their profiles that can only be mentioned in the “Additional Comments” portion, such as religion. See Declaration of Bryan Peters (“Some Roommate.com users have religious beliefs that impact their selection of roommates. Many are Christians.... By referencing these beliefs in their profiles, users avoid the need to contact and interview dozens of incompatible people.”).
Turning to the objective evidence of Roommate’s solicitation, the best evidence of how users perceive the web site generally and the “Additional Comments” section specifically, is the myriad discriminatory statements that users have written in that section. The statements in notes 1 through 5, such as “The person applying for the room MUST be a BLACK GAY MALE,” and the others relating to religious, racial, and gender preferences, are representative of the numerous “Additional Comments” expressing such preferences. Additionally, the web site displays testimonials that suggest to potential users that they are free to obtain “suitable” tenants by listing discriminatory prefer- *933 enees — preferences that can only be set forth in the “Additional Comments.” The site also invites prospective users to preview its search mechanism, thereby exposing them to user profiles that prominently display “nicknames” such as Christianldy, Chinesegirl, Whiteboy73, africanboy, Lati-nagirl, gaycouple, blackbarbie. By having its search mechanism display these nicknames to prospective users, Roommate suggests that it is desirable, as well as permissible, to use the profiles to achieve discriminatory goals. The site even displays a sample of a completed profile— linked from the front page — that includes a discriminatory preference in the first sentence of the “Additional Comments” section, illustrating how users may express similar preferences in their own profiles. Finally, by placing the “Additional Comments” form directly after the forms in which users must express their “identities,” and in which they are asked to state their preferences with respect to gender, sexual orientation and familial status, the site strongly suggests that the “strong recommend[ation]” to “describ[e] yourself and what you are looking for in a roommate” is in essence an invitation to elaborate on discriminatory preferences already listed and to list others such as race, religion, or national origin.
In light of the objective and subjective evidence that Roommate solicits users to set forth discriminatory requirements in their “Additional Comments,” I conclude that Roommate is ' not immune under § 230(c), and, at the very least, there is a genuine dispute of material fact as to this question. Accordingly, in no event is partial summary judgment in favor of Roommate appropriate.

. A member with the profile name ''BLKMAIL4U'' states that "The person applying for the room MUST be a BLACK GAY MALE." (emphasis added).

. A member with the profile name "sassy 1 lady” states that "This is a Christian home and we are looking for a Christian female to rent a downstairs room.” (emphasis added).

. A member with the profile name "mrtoy2001” states that "I am looking for sex starved women who are wanting to get that funny familiar forgotten feeling all over again. The better I can make you feel, the better I feel. I don’t know about you but I am ready to feel real good. My goal is to PLEASE YOU.” (emphasis added).

. A member with the profile name "happyh-eart” states that "I am looking for a neat freak, Christian, non smoking, straight, friendly female to share an apartment with. I am all of the above.” (emphasis added).

. A member with the profile name "bala” states that "I am looking for asian/spanish persons to share the apartment.” (emphasis added).

. I disagree with the court’s conclusion that "Roommate's involvement is insufficient to *932 make it a content provider” of the information in the "Additional Comments” portion of the profiles because Roommate does not "use the information in the ‘Additional Comments' section to limit or channel access to listings.” Op. at 929. If Roommate is responsible even in part for creating or developing the entire profile, as Judge Kozinski's opinion makes clear, it is irrelevant that Roommate uses only the statements in the "Preferences” and "Household” portions to guide its categorization decisions.